IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MATTHEW GREGORY BASHORE, II<br>and ANGELA CHRISTINE BASHORE | §<br>§<br>§ | |
| v. | §<br>§ | Case No. 4:11cv93 |
| BANK OF AMERICA, COUNTRYWIDE<br>HOME LOANS, INC., MORTGAGE<br>ELECTRONIC REGISTRATION<br>SYSTEMS, INC., BARRETT DAFFIN<br>FRAPPIER TURNER & ENGEL, LLP,<br>NATIONAL DEFAULT EXCHANGE, LP,<br>LITTON LOAN SERVICING,<br>DYCK-O'NEAL, INC., TRAVELERS<br>CASUALTY & SURETY COMPANY<br>OF AMERICA, EXPERIAN INFORMATION<br>SOLUTIONS, INC., COMPUTER<br>SCIENCES CORPORATION and<br>TRANSUNION CORPORATION | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

**REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE**

Now before the Court are Defendant Litton Loan Servicing, LP's Amended Motion to Dismiss (Dkt. 76), Dyck O'Neal, Inc. And Travelers Casualty & Surety Company's Motion to Dismiss Plaintiffs First Amended Complaint Under FRCP 12(b)(6) (Dkt. 77), Defendant Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 91), Defendants Bank of America Corporation and Countrywide Home Loans, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 92), and Defendants Barrett Daffin Frappier Turner & Engel, LLP's and National Default Exchange, LP's Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 116).

As set forth below, the Court finds that the motions should be GRANTED in part and DENIED in part.

## Factual Background

This lawsuit arises out of two mortgage loans that were obtained by Plaintiffs Matthew Gregory Bashore, II and Angela Christine Bashore from America's Wholesale Lender. "America's Wholesale Lender" is an assumed name, or "d/b/a," of Countrywide Home Loans, Inc. ("CW/BOA").

On February 27, 2006, Plaintiffs executed a Deed of Trust granting MERS, as nominee for America's Wholesale Lender ("AWL"), a first lien security interest in the property located at 10145 Sanden Drive, McKinney, Texas 75070 (the "Property"). The Deed of Trust secured a promissory note executed by Plaintiffs on the same date promising to repay the original principal amount of $173,330.40, plus interest. On the same date, Plaintiffs executed a Purchase Money Security Document (Second Lien) granting MERS, as nominee of AWL, a second lien against the Property. The Purchase Money Security Document (Second Lien) secures a promissory note executed by Plaintiffs promising to repay the original principal amount of $43,332.60, plus interest. In both the Deed of Trust and the Purchase Money Security Document, it was expressly agreed "MERS is a beneficiary under this Security Instrument." On November 6, 2007, the Property was sold at a foreclosure sale.

Plaintiffs filed this action *pro se* on February 24, 2011. After several defendants filed motions to dismiss their claims, Plaintiffs sought leave to amended their complaint, which the Court

granted. *See* Dkt. 79. Plaintiffs amended their complaint, and, after a scheduling conference before the Court, the case was stayed to allow the Court to address the claims raised by Plaintiffs' First Amended Complaint. *See* Dkt. 115.

In their amended complaint, Plaintiffs assert various claims and causes of action against numerous defendants who have, in one way or another, been connected with one or both of the loans at issue. Plaintiffs first generally allege that the mortgage documents are invalid and do not represent a valid obligation or encumbrance, that the documents were improperly bifurcated, that the foreclosure sale was invalid, and that the alleged deficiency balance is false and inaccurately reported on their credit history. These claims are asserted against CW/BOA, MERS, Litton, Barrett Daffin, Dyck O'Neal, Experian and Transunion.

Plaintiffs then allege the following specific causes of action: fraud (against Defendant MERS and Dyck O'Neal), violations of the Texas Deceptive Trade Practices Act ("DTPA") (against Defendants CW/BOA, Litton and Dyck O'Neal), violations of Texas Debt Collection Act ("TDCA") (against Defendants CW/BOA, Litton and Dyck O'Neal), violations of the Fair Credit Reporting Act ("FCRA") (against Defendants CW/BOA, Litton and Dyck O'Neal).

Plaintiffs assert no specific cause of action against Defendant Travelers but allege that Travelers is liable for Defendant Dyck-O'Neal's purported TDCA violations pursuant to a $10,000 surety bond. Dkt. 70 at ¶56.

Defendants CW/BOA, MERS, Litton, Barrett Daffin, Dyck O'Neal, and Travelers have now all filed motions to dismiss Plaintiffs' claims against them pursuant to Rule 12(b)(6). Since

amending their complaint, Plaintiffs have dismissed their claims against Transunion and Experian (*see* Dkts. 86, 89, 110 and 111).

## STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 1969, 167 L. Ed.2d 929 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id*. at 563 n.8.

Although detailed factual allegations are not required, a plaintiff must provide the grounds of his entitlement to relief beyond mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level" and into the "realm of plausible liability." *Id*. at 555, 557 n.5. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009), (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955)). For a claim to have facial plausibility, a plaintiff must plead facts that allow the

court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  Therefore, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id*. (internal quotations omitted).

## ANALYSIS

### *Invalidity of Mortgage Documents*

The Court first addresses Plaintiffs' allegation that the mortgage documents are invalid and do not represent a valid obligation or encumbrance.

First, Plaintiffs claim that they entered into the mortgage agreement with America's Wholesale Lender ("AWL") and that it was not disclosed to them that AWL was an assumed name for Countrywide.  Plaintiffs claim that had they known this they would have "reconsidered their acceptance of the Mortgage Documents."  Dkt. 70 at ¶ 14.  A review of the record here indicates that Countrywide Home Loans, Inc. filed an assumed name certificate for America's Wholesale Lender three years before Plaintiffs signed the mortgage documents here.  *See* Dkt. 88-1.[1]  The Court finds that such filing was sufficient under Texas law.  *See* TEX. BUS. & COM. CODE § 71.101.  The fact that Plaintiffs may have later had the benefit of hindsight does not state a claim here that would

---

[1]Although a district court may generally not go outside the complaint when considering a motion to dismiss, a district court may consider documents attached to a motions to dismiss if the documents are referenced by the plaintiff's complaint and are central to the plaintiff's claims. *Scanlan v. Tex*as *A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *see also Causey v. Sewell Cadillac-Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004).  The Court finds the Assumed Name Certificate to be central to Plaintiffs' claims here.

invalidate their obligations under the mortgage documents.

***Purported Bifurcation of Mortgage Documents and Validity of Actions Thereunder***

Next, Plaintiffs allege that both the Deed of Trust and Purchase Money Security Document are invalid because the designation of MERS in these documents, but not in the promissory notes which they secure, "bifurcates" the notes and the liens rendering them nullities. Plaintiffs further allege that, even if the Deed of Trust were valid, the foreclosure was invalid because "MERS was not legally or contractually authorized to enforce the power of sale" and not "legally authorized to appoint a substitute trustee to conduct the foreclosure sale." Dkt. 70 at ¶25. Plaintiffs also argue that the sale was invalid because the substitute trustee was not an employee of MERS.

Plaintiffs' arguments are not supported by the governing law in this Circuit.

The Deed of Trust here provides:

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in, the County of Collin:

Dkt. 70-1 at 3. Further, the Purchase Security Document (Second Lien) identifies MERS as a beneficiary acting as a nominee. Dkt. 70-1 at 18.

Plaintiff has argued that MERS' assignment of the mortgage was invalid. Under the Texas Property Code, a mortgagee may authorize a mortgage servicer to service a mortgage and conduct

a foreclosure sale. *See* TEX. PROP. CODE. ANN. § 51.0025. Here, the mortgage documents attached by Plaintiffs to their amended complaint have identified MERS as the beneficiary and the nominee for the original lender and its successors and assigns. Thus, MERS is a mortgagee under the Texas Property Code. *See* TEX. PROP. CODE ANN. § 51.0001(4). *Allen v. Chase Home Finance, LLC*, 2011 WL 2683192, 3 (E.D. Tex. 2011). Various opinions within the Fifth Circuit have rejected Plaintiffs' bifurcation argument and, without any factual distinctions by Plaintiffs here, the Court declines to re-plow well harvested ground. *See, e.g., Richardson v. CitiMortgage, Inc.*, 2010 WL 4818556, at *5 (E.D. Tex. 2010) (rejecting the plaintiffs attack on MERS, and noting that "[u]nder Texas law, where a deed of trust, as here, expressly provides for MERS to have the power of sale, then MERS has the power of sale") (*citing Athey v. MERS,* 314 S.W.3d 161, 166 (Tex. App. Eastland 2010)); *Allen v. Chase Home Finance, LLC*, 2011 WL 2683192, at *3-4 (E.D. Tex. Jun. 10, 2011); *Anderson v. CitiMortgage, Inc.*, 2011 WL 1113494, at *1-2 (E.D. Tex. Mar. 24, 2011); *see also Santarose v. Aurora Bank FSB,* 2010 WL 2232819, at *5 (S.D. Tex. Jun. 2, 2010) (rejecting the argument that MERS lacked standing to foreclose and was not a real party in interest); *Wiggington v. Bank of New York Mellon*, 2011 WL 2669071, at *3 (N.D. Tex. Jul. 7, 2011). "In other words, a transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions." *DeFranchesci v. Wells Fargo Bank, N.A.*, 2011 WL 3875338, at *4 (N.D. Tex. Aug. 31, 2011). "Because the deed of trust specifically provided that MERS would have the power of sale, MERS had the power of sale that was passed to U.S. Bank upon MERS's assignment." *Id.* (quoting *Richardson*, 2010 WL 4818556, at *5). In short, there is no merit to

Plaintiffs' argument that the Deed of Trust and Note were 'split,' such that it would invalidate the foreclosure.

Further, because MERS is a mortgagee under Texas law, Plaintiffs' arguments that MERS was not authorized to sell the Property or appoint a substitute trustee also fail. *See id*; TEX. PROP. CODE § 51.0075(c) ("Notwithstanding any agreement to the contrary, a mortgagee may appoint or may authorize a mortgage servicer to appoint a substitute trustee or substitute trustees . . ."). Plaintiffs have also failed to plead facts that would show that CW/BOA and Litton were not authorized to service the loans. Therefore, those claims should be dismissed.

### *Invalidity of Foreclosure Sale*

Plaintiffs next allege that they did not receive proper notices of acceleration with an opportunity to cure or notice of the foreclosure sale as is required by the mortgage documents and Section 51.002 of the Texas Property Code.

It is in this section of Plaintiffs' complaint where Plaintiffs apparently assert claims against the law firm Barrett Daffin Frappier Turner & Engel (BDFTE) and National Default Exchange, LP. These Defendants have filed a motion to dismiss arguing that any claims against them should be dismissed because the sole contact they had with Plaintiffs was is in their capacity as legal counsel for Bank of America and MERS.

Attorneys are generally not liable to a third party for actions taken in connection with representing a client. *Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d 398, 406 (Tex. App.– Houston [1st Dist.] 2005, pet. denied); *Toles v. Toles,* 113 S.W.3d 899, 910 (Tex. App.– Dallas

2003, no pet.); *FinServ Cas. Corp. v. Settlement Funding*, LLC 724 F. Supp.2d 662, 671 -673 (S.D. Tex. 2010). "[An attorney is liable if he knowingly commits a fraudulent act that injures a third person, or if he knowingly enters into a conspiracy to defraud a third person." *Lookover v. Sunflower Terrace II, Ltd.,* 696 S.W.2d 468, 472 (Tex. App.– Houston [1st Dist.] 1985, no writ). To be liable under this formulation, an attorney must "knowingly commit" a "fraudulent act outside the scope of his legal representation." *Alpert,* 178 S.W.3d at 406. In the fraud portion of their complaint, Plaintiffs have alleged that BDFTE conducted the foreclosure sale unlawfully with the knowledge that Plaintiffs would rely on the false information. Such allegations still fall within the scope of BDFTE's legal representation of the lenders. Because Plaintiffs have not alleged any facts that would show tortious conduct by BDFTE or National Default Exchange, LP. falling outside the scope of their legal representation of MERS and BOA, any claims against them should be dismissed.

However, Plaintiffs have stated sufficient facts to show that notice was not given in accordance with the Texas Property Code and the mortgage documents. In Texas, for a foreclosure sale under a deed of trust to be valid, the terms set out in the deed of trust must be strictly followed. *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.,* 644 S.W.2d 705, 706 (Tex. 1982); *see also League City State Bank v. Mares,* 427 S.W.2d 336, 340 (Tex. Civ. App.-Houston [14th Dist.] 1968, writ ref'd n.r.e.) (stating that foreclosure was wrongful because plaintiffs were current in payment on note at date of attempted acceleration and foreclosure). Failure to properly foreclose on property gives rise to a cause of action for either the return of the property or damages. *UMLIC VP LLC v. T & M Sales and Envtl. Sys., Inc.,* 176 S.W.3d 595, 610 (Tex. App.- Corpus Christi 2005, pet. denied)

(citing *Univ. Sav. Ass'n,* 644 S.W.2d at 706). The correct measure of damages is the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness. *Farrell v. Hunt,* 714 S.W.2d 298, 299 (Tex.1986); *Charter Nat'l Bank–Houston v. Stevens,* 781 S.W.2d 368, 375 (Tex. App.-Houston [14th Dist.] 1989, writ denied). Therefore, those claims shall remain at this time. Plaintiffs are cautioned that they will be required to produce credible evidence to support their claims of lack of notice in order to survive summary judgment as to this claim.

### *Fraud Claims*

Next, the Court turns to Plaintiffs' fraud claims. To assert a claim of fraud under Texas law, a plaintiff must allege (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d 200, 212 (5th Cir. 2009) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Morever, Federal Rule of Civil Procedure 9 requires that a party state with particularity the circumstances constituting fraud or mistake. FED. R. CIV. P. 9(b).

Defendants seek dismissal of the fraud claims because Plaintiffs fail to allege any false statements with the specificity required in this Court. The Court agrees that Plaintiffs have failed to sufficiently state the "'who, what, when, where, and how'" of any knowingly false statements.

10

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997); *see also United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 872-73 (5th Cir. 2008). The pleading requirements for fraud in federal court is stringent, and the Court finds that Plaintiffs' complaint simply lacks specificity as to the purportedly knowingly false representations made by each defendant, and those claims should be dismissed.

### *Texas DTPA Claims*

Defendants also argue that Plaintiffs have failed to state a claim under the Texas Deceptive Trade Practices Act. The DTPA prohibits entities engaged in commerce from engaging in "false, misleading, or deceptive acts or practices." TEX. BUS. & COM. CODE ANN. § 17.46(a) (West 2007). Because the DTPA is a tie-in statute and a violation of the TDCPA is a deceptive trade practice under the DTPA, a TDCPA violation is actionable under the DTPA. *Id*. at § 17.50(h); TEX. FIN. CODE ANN. § 392.404(a). However, to meet the DTPA standing requirement, a complaining party must plead and prove that he or she is a "consumer" as defined in the DTPA. TEX. BUS. & COM. CODE ANN. § 17.50(a); *Burnette*, 2010 WL 1026968, at *9 (citing *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App.– San Antonio 1996, no writ)). To qualify as a consumer under the DTPA, (1) the person must have sought or acquired goods or services by purchase or lease and (2) the goods or services purchased or leased must form the basis of the complaint. *Id*. at § 17.45(4); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981).

Thus, here, Plaintiffs must have pled sufficient facts to establish their status as "consumers" in order to bring claims under the DTPA. To establish consumer status under the DTPA, a plaintiff

must be "an individual ... who seeks or acquires by purchase or lease, any goods or services ...." TEX. BUS. & COM. CODE § 17.45(4). Generally, loans of money or extensions of credit are not considered "goods" or "services" that can form the basis of a DTPA claim. *Gomez v. Wells Fargo Bank, N.A.*, 2010 WL 2900351, 3 (N.D. Tex. 2010) (where party was attempting to only borrow money and not purchase a good or a service, it did not satisfy the requirements for consumer status under the DTPA and therefore failed to state a claim pursuant to the Texas Deceptive Trade Practices Act); *Guardian Life Ins. Co. v. Kinder*, 663 F. Supp.2d 544, 553 (S.D. Tex. 2009); *La Sara Grain Co. v. First Nat'l Bank,* 673 S.W.2d 558, 567 (Tex. 1984); *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 174 (Tex. 1980); *Maginn v. Norwest Mortgage, Inc.,* 919 S.W.2d 164, 166-67 (Tex. App.-Austin 1996, no writ). However, a party who obtains a loan which is "inextricably intertwined" in the purchase or lease of a good or service may qualify as a consumer. *Knight v. Int'l Harvester Credit Corp.,* 627 S.W.2d 382, 389 (Tex. 1982) (finding that a bank customer qualified as a consumer because he sought financing to purchase a dump truck); *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 707 (Tex. 1983) (holding that party was a consumer when party's mortgage loan was intertwined with contractor's agreement to build a house); *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App. – Fort Worth 2007, pet. denied) (the refinance of home equity loan cannot qualify as a good or a service under the DTPA); *Marketic v. U.S. Bank Nat. Ass'n*, 436 F. Supp.2d 842, 855 (N.D. Tex. 2006) (one who obtains a home equity loan does not obtain a "good" or a "service" to qualify as a consumer under the DTPA).

Here, Plaintiffs claim that they are consumers because "they sought to purchase and eventually acquired the Property that forms the basis of this complaint." Dkt. 70 at ¶51. Plaintiffs' complaint does not state facts sufficient to show they could be treated as consumers under the case law guiding this Court. The Court further agrees with Defendants that, even if they had stated facts sufficient to show their consumer status – which they have not – their allegations as to the DTPA violations do not rise to the pleading levels required to state a claim.

In order to survive a motion to dismiss, a plaintiff must provide the grounds of his entitlement to relief beyond mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Here, Plaintiffs' complaint lacks the factual specificity required in alleging how Defendants' actions constituted DTPA violations. *See* Dkt. 70 at ¶¶ 51-53. Finally, even if Plaintiffs had stated their status as consumers and even had they sufficiently stated the misrepresentations at issue, the statute of limitations would likely bar any DTPA claims here.[2] Therefore, all claims under the DTPA should be dismissed.

### *TDCA Claims*

Plaintiffs have also argued that Defendants CW/BOA, Litton and Dyck O'Neal violated the Texas Debt Collection Act, Texas Finance Code § 392.300, *et. seq*. Plaintiffs' complaint does not identify specific sections of the TDCA they claim were violated, but does state that Defendants

---

[2] The statute of limitations on a DTPA claim is two years. TEX. BUS. & COM. CODE § 17.565. The cause of action accrues on either (1) the date when the alleged false, misleading, or deceptive act or practice occurred, or (2) the date when the plaintiff discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. *Id.* Here, the foreclosure at issue occurred in 2007 but the suit was not filed until almost four years later

13

"communicated with the Bashores in connection with the collection of a false and fraudulent debt" and "failed to appropriately investigate, respond, and/or cease collection efforts." Plaintiffs' complaint then states that Defendants threatened to take action prohibited by law, attempted to collect unauthorized interest or charges, fees, or expenses, misrepresented the character, extent or amount of the debt, represented that the debt may be increased by the addition of unauthorized attorney's fees, investigation fees, service fees, or other charges, represented that the debt will definitely be increased by the addition of unauthorized attorney's fees, investigation fees, service fees or other charges and used a variety of other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Dkt. 70 at ¶ 55.

The TDCA prohibits debt collectors from making fraudulent, deceptive, or misleading representations concerning "the character, extent, or amount of a consumer debt." TEX. FIN. CODE ANN. § 392.304(a)(8). The TDCA further prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id*. at § 392.304(a)(19).

Defendants have argued that because the foreclosure sale occurred November 6, 2007, Plaintiffs' TDCA claim became barred in November 2009. The statute of limitations for a TDCA claim is two years. *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 872 (Tex. App. – Corpus Christi 1998, pet. denied); *see also* 16 DORSANEO, TEXAS LITIGATION GUIDE § 242.01[4] (stating that the two-year limitations period in Texas Civil Practice and Remedies Code § 16.003(a) applies to TDCA claims).

Plaintiffs have alleged that they did not discover any of Defendants' alleged wrongdoings until September 2010 as a result of "the media reports of 'robo-signing,' case filings and court rulings regarding MERS and other servicing, lender, mortgage irregularities and governmental investigations launched into fraudulent mortgage documents and property records." Dkt. 70 at ¶13. The Court finds that these facts are insufficient to invoke the discovery rule and prevent the application of the two-year statute of limitations to their tort claims.

The discovery rule is a "very limited exception to statutes of limitations, which defers the accrual of the cause of action until the injury was or could have reasonably been discovered." *Shell Oil Co. v. Ross*, 55 Tex. Sup. Ct. J. 223, 2011 WL 6277778, 5 (Tex. 2011) (internal quotations omitted). The discovery rule applies "only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex.2001). To be "inherently undiscoverable," an injury must be, by nature, unlikely to be discovered within the prescribed limitations period despite the plaintiff's diligence. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006).

Here, Plaintiffs' claims are based on the Mortgage Documents for the Property and Defendants' conduct under them. The Court finds that such misconduct was not inherently undiscoverable to Plaintiffs – indeed all of the facts and documents here appear to have been in Plaintiffs' possession or available to them well before February 2009 – two years before the filing of their suit. *Wagner,* 58 S.W.3d at 735 (finding that the discovery rule did not apply to defer the accrual of royalty owners' claims for underpayments since the injury was not inherently

undiscoverable because the royalty owners could have timely discovered the underpayments through the exercise of due diligence); *Shell Oil Co.*, 55 Tex. Sup. Ct. J. 223, 2011 WL 6277778 at 5 (finding that the plaintiff could have timely discovered the underpayments of royalty payments through the exercise of due diligence). The Court notes that – with the exception of Plaintiffs' TDCA claims against Dyck O'Neal and Travelers which pertain to purported conduct from 2008 to 2010 – Plaintiffs' TDCA allegations lack any specificity as to the time of the alleged violations.

Plaintiffs have not stated facts to show how any alleged 'robo-signing' or governmental investigations into fraudulent mortgage documents and property records – which they state was not discoverable until 2010 – are tied to their claims here. Therefore, the Court finds that Plaintiffs have not stated sufficient facts in this case such that the discovery rule would save their TDCA claims against Defendants CW/BOA and Litton.

As to Defendant Dyck O'Neal, Plaintiffs have alleged collection efforts on the deficiency balance within the two-year statute of limitations. Plaintiffs have specifically alleged that they dispute the deficiency balance Defendant Dyck O'Neal sought to collect in 2009 and 2010. While the Court finds that Plaintiffs have failed to state a claim as to Defendant's lack of authority to collect the deficiency balance, the facts here, if true, might state a claim that Defendant misrepresented the amount of the debt owed while attempting to collect on the debt. Therefore, given the disfavor with which motions to dismiss are treated and without reaching the merits of Plaintiffs' arguments as to the correct deficiency balance, the Court finds that Plaintiffs have stated a claim of TDCA violations against Dyck O'Neal within the statute of limitations. Plaintiffs have

16

not, however, sufficiently alleged how Travelers should be held liable for this conduct, and the claims against it should be dismissed.

*Fair Credit Reporting Act Claims and Plaintiffs' Disputed Deficiency Balance*

Plaintiffs next allege that Defendants CW/BOA, Litton and Dyck O'Neal violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* Plaintiffs' complaint again does not allege which specific sections of the voluminous statute they allege were violated, but do detail their disputes as to the deficiency balances reported to the Credit Reporting Agencies. *See* Dkt. 70 at ¶¶ 28-36.[3] Plaintiffs' allegations are centered on Defendants' furnishing of information to Credit Reporting Agencies, Plaintiffs' dispute thereof, and Defendants' purported failure to investigate, refusal to investigate or continued reporting of false and inaccurate information, matters addressed by Section 16981s-2 of the Act.

Defendants have challenged these claims, in part, arguing that there is no private action available to Plaintiffs for these claims. Sections 1681n and 1681*o* permit recovery by consumers for willful or negligent non-compliance with the Act. 15 U.S.C. §§ 1681n, *o*. But Section 1681s-2(c) specifically precludes any private causes of action for violations of Section 1681s-2(a). Therefore, Plaintiffs are limited to Section 1681s-2(b) in the FRCA claim. That Section sets forth the duties of the furnishers once consumers have disputed the information reported. The Court finds that, given the facts alleged and the disfavor with which motions to dismiss are treated, Plaintiffs have

---

[3]To the extent Plaintiffs' Complaint seeks to assert a claim under Texas Property Code 51.003, that claim should be dismissed because, as acknowledged by Plaintiffs, none of the Defendants filed suit to recover the deficiency balance within two years.

sufficiently alleged a claim under Section 1681s-2(b).

As to Defendants' argument that the notice provided by Plaintiffs did not comply with 15 U.S.C. §1691s-2(a)(8)(D), the Court finds that such a dispute is more appropriate for a motion for summary judgment or trial practice. The Court cautions Plaintiffs that, as with their other surviving claims, they will have to support their claims with competent summary judgment evidence in order to proceed to trial.

## CONCLUSION

Therefore, as set forth fully above and having given the deference to *pro se* Plaintiffs that is required in this Circuit, the Court finds that Defendant Litton Loan Servicing, LP's Amended Motion to Dismiss (Dkt. 76), Dyck O'Neal, Inc. And Travelers Casualty & Surety Company's Motion to Dismiss Plaintiffs First Amended Complaint Under FRCP 12(b)(6) (Dkt. 77), Defendant Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 91), Defendants Bank of America Corporation and Countrywide Home Loans, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 92), and Defendants Barrett Daffin Frappier Turner & Engel, LLP's and National Default Exchange, LP's Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 116) should be GRANTED in part and DENIED in part.

Plaintiffs have stated a claims for wrongful foreclosure based on lack of proper notice of the foreclosure sale, TDCA violations against Defendant Dyck O'Neal, and Fair Credit Reporting Act violations against Defendants CW/BOA, Litton and Dyck O'Neal. Those claims shall remain at this time. Plaintiffs' claims regarding the validity of the mortgage documents, Plaintiffs' TDCA claims

against Defendants Litton and BOA/CW, all claims against Defendants BDFTE, National Default Exchange, LP. and Travelers, and Plaintiffs' fraud and DTPA claims against all Defendants should be dismissed for failure to state a claim.

Plaintiffs should be required to file an amended complaint accordingly, and within fifteen days of the District Judge's consideration of this report, the parties should submit a proposed scheduling order to govern the remaining claims in this case.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).[4]

Failure to timely file written objections to the proposed findings and recommendations contained in this report shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 27th day of February, 2012.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

---

[4]The Court notes that, although Plaintiffs are proceeding *pro se*, they requested and were granted leave to receiving electronic notice of filings in this matter. *See* Dkt. 24.